Okay, well, we're here on Plaintiff Masud Hannan's complaint for breach of contract and Wage Claim Act under Oregon Wage Claim laws. And we have the judge in the district court below, Judge Haggerty, had ruled on defendant's motion to dismiss for the stated reason that Maxim's shares were unregistered at the time that Plaintiff Masud Hannan had tried to actually terminate his employment, and even before his employment. And that is an incorrect finding of fact. Are we concerned with findings of fact? Is this a 12b-6 motion? Yes, Your Honor. So your only concern is whether you duly alleged that, or their concern, you duly alleged that the stock was unregistered, or whether the two documents which were judicially noticed contain those facts. Is your point that you didn't allege that the stock was unregistered and the 8k and the other document do not show that it was unregistered? Your Honor, Plaintiff did not allege that the stocks were unregistered. It wasn't necessary at the time in the complaint. Plaintiff alleged that Maxim had breached a stock opt-in agreement. But you need to have a basis for that. Yes. Okay. So let me just ask you, following up on Judge Bea, if these stocks were unregistered at the time, and I'm not saying that they were or even that there's evidence that they were, but if they were unregistered, would you still have a claim with respect to the breach of contract? Actually, I would say that you would still have a claim, because those provisions that you're talking about in terms of the agreement that say that the stocks must be registered under the SEC, those are in the legal provisions which are at issue in this case. Is part of your theory, if the case goes on, that the directors in one way or another either were A, responsible for the lack of registration, or B, manipulated the lack of registration, or C, otherwise acted in bad faith? I think it would be A and C. I don't think that they manipulated the fact that the stocks were unregistered, because plaintiff's contention is that they never were unregistered. And so I wouldn't say that the directors of the special committee manipulated it. Mr. Mayfield, I don't think I quite caught your answer to Judge McKeown's question. If the stock were indeed unregistered, your position is that it should have been issued to Mr. Hannan in any case, because the provisions regarding registration were in a legal document. I took a note. Tell me what, I don't follow you. Okay, we have the stock option agreement, the 1996 plan, if you will, and it has the terms of the stock option agreement. And in addition, there is an attached legal provision. The attached legal provision spells out that it would be an excuse of performance for Maxim not to issue shares for employees under stock options if the stocks were not registered with the SEC. What document are you looking at? Is that an attachment? You're talking about attachment to the stock incentive plan? Yeah, there's a 1996 stock incentive plan. Correct. And then there's the legal provisions that are attached to the plans and are presumably incorporated into the agreement. And they were attached as Exhibit B and C to the motion to dismiss  so it's two different exhibits, the legal provisions. However, Plaintiff contends that they have not been authenticated. Judicial notice was taken of those legal provisions. They were provided by Maxim. Plaintiff admits that he received legal provisions but does not admit that those are the legal provisions that he received. So therefore, we have a question of authentication of the document. Is it the same legal provision that he was provided? And that is in contention. And those provisions, Judge Bia, that you're referring to, the registration or not registration are part of the legal provisions which have not been authenticated and Plaintiff has not admitted that he's received those documents that the court took judicial notice of. Well, sit back a moment and think what the next step will be. The next step will be a motion of summary judgment in which an undisputed fact will be that these provisions were indeed sent to the plaintiff and the plaintiff agreed to them. If you know that that's going to be the situation, then answer Judge McCune's question. If they can prove without beyond a shadow of a doubt that these legal provisions said that if the stock were unregistered, they did not have to issue it, don't you lose? Well, perhaps. But the stocks were not unregistered, though. So you are ‑‑ let me just make sure. I want to make sure I understand your position here. So your position is if under the agreement there are provisions that say if the stocks are not registered, you don't get the options, and if they were not registered, then your position is he wouldn't get the options. However, your position is but they were registered, they never became unregistered or they never became in some limbo. Is that your position? That's right. And to answer your first question, I think the plaintiff still prevails under the breach of contract theory, even if the stocks are found unregistered because if they were found unregistered, it was only because Judge Hawkins B alternative that the Maxim Director's Special Committee, its officers, caused them to be unregistered due to its illegal backdating and fraud, to answer your second question. But I don't believe that's the case. Well, do you have a ‑‑ is that a breach of contract? Is that a securities violation? It's both. In this case ‑‑ Do you have a securities claim or is this solely a breach of contract? This is solely a breach of contract, Your Honor. At any rate, that's the two main claims of the breach of contract issue. And I think we've narrowed it down that whether the stocks were registered or not, the plaintiff still alleges that this would be a breach of contract because if there's a condition in both the plan and, of course, there's this legal provision saying there's an excuse for performance if there's a regulatory authority that would prevent the issuance of shares. However, there hasn't been any ‑‑ there's no proof or evidence that this ‑‑ any authority had prevented the issuance of shares. And, in fact, if you look at the ‑‑ if you look at Exhibit A to ‑‑ well, it's Exhibit A of the Defendant's Appellee's Supplemental Excerpt of Record. We have a letter from Maxim to employees. It's not dated, but we know it's after September 7th, 2006, because there's reference to that date in the letter. It says, I'm writing you today to inform you personally of a short‑term disruption in the operation of the stock option plan and the employee stock participation plan. On September 7th, 2006, we informed the U.S. Securities and Exchange Commission that due to our ongoing internal review, that's a key term there, our ongoing internal review, that's Maxim, this is Maxim's letter, of stock option grants and practices, we are delaying the filing of our annual report form 10K for fiscal year 2006 until the option review is completed. I haven't found any reference in here as to when the 10K, I'm saying the pleadings as a whole, when they need to be filed, but presumably for 2006, it has to be after September 7th because they weren't filed. Does a failure to file a 10K affect the registration status of the securities? No. It doesn't? No. It can. Yeah. It can. And that's where they were headed because there's other references or documents in here and Maxim public, how can I say, well, they're public filings. They're 8K, they're 10K, they're 10 quarterly. In these filings to prospective shareholders and current shareholders, it indicated that there could be a possible delisting by NASDAQ, and they said this as late as, I believe, October of 2007. They were still saying in their public announcements, that's the term I'm using, Maxim's public announcements, they had stated at this time in this letter to employees and up until October 2007 that NASDAQ was going to delist the company's shares. Go ahead. So from 2006 to 2007 and after this letter, Exhibit A, which you mentioned, the shares of Maxim continued to be traded on the NASDAQ. Yes. But not the, that is true, but not the employee stock options because there was this blackout or this freeze imposed internally by Maxim. Did the SEC or the National Association of Security Dealers raise the issue that Maxim shares were no longer registered and should not be traded on a national exchange? Never, and that's the point that I want to make here today, that they never, we have no evidence, no exhibits, no, that the SEC, the regulatory authority, ever said to Maxim, you can no longer issue your shares. Their primary argument is the 1996 provisions say that we have to comply by all applicable laws. There's a provision in there. Okay, all applicable laws, the only laws that they cited is the CFR, 17 CFR 12B25, I believe, which essentially says you have to be current on your registration forms. That's the only one they cited. Was there ever any indication they were not current on their registration forms? No, the argument is that their S8 form, a 10K and a 10Q are annual and quarterly forms to inform the public and shareholders, the financial health of the company, if you will. The S8 form, which I assume is a key form, that's a registration form that you use to inform the SEC of your employee stock option plan. And that's not cited in your complaint, is that correct? There is a cite, but I believe there is actually a cite in the complaint. I think that's incorrect and that might have been a misreading by me in the pleadings. I think you're right that I had said that. But I think there is a reference to the S8 in my plaintiff's complaint. However, it's relied on extensively in the motion, not the motion to dismiss, but in these briefs by Maxim. Right. Well, so now that's kind of a little change and I needed to go back and look at that. But your original position, I thought, was the S8 was not even cited, so therefore it was inappropriately incorporated by reference. But now you're suggesting that, in fact, it was cited, therefore it would be appropriate not only for opposing counsel, but for the district court to take notice of the contents of the S8. There was never any judicial notice of the S8. We don't have the actual form itself, but I do think there might have been some reference. The principle of what it stands for. Yeah, and there was no citation of the 12B25 by plaintiff in its original complaint. And I don't believe there was any reference in the answer either by defendants of 12B25, which relates to the S8. Okay. You're about out of time. Yes. We haven't gotten to another major issue, which is the wage issue. Yes. So why don't you take about a minute to state your position on that. Sure. I think that's, you know, there's an Oregon case, the Burke v. America case, that basically says that wages are, stock options are wages in Oregon. It doesn't say that. Well. Show me where it says that. Tell me where it says that. Well, it's persuasive. No, okay. But that's, you know, really it's not helpful to the court to stand up and say an Oregon case says X when it doesn't say X. Now, it might allude to or you might be able to infer, but I think it's unfair in the briefing to say it says it. So Burke doesn't say that. Well, the court below said that. The court below so held in the Burke case. I'm talking about the county court in that case, and that case was appealed to the Court of Appeals. Is there a decision of the Oregon Supreme Court or its Court of Appeals, a published decision that says stock options are wages? The answer is no. There's no. One of the reasons that that doesn't surface in the Court of Appeals decision is because, as you're probably more familiar than we are in the Oregon State pleading, you know, specific error to the court, and that issue wasn't raised in any way. Is that right? No. I'm sorry. What issue is that, Your Honor? Whether the stock options should be classified as wages. That really wasn't an appealed issue. Yes, it was. And the Burke decision was cited extensively for, I think, maybe five pages to the court below in the pleadings. Well, it was cited, but in terms of the actual, there's no decision of the Oregon Court of Appeals on that point. There's discussion, but there's no decision. Your Honor, that, I mean, to summarize, there was discussion, but that was what the whole case was about, really, was about stock options in Oregon. And, again, I'm running a little over time, but we have a, the plaintiff in that case was somebody who went to work for a company. He was promised orally that he would have a stock option, right to stock options with the company that was a growing company. That officer or employer who promised that left. There was a formal agreement that came afterwards that formalized the stock option agreement, much like we have here. Then the new management, and the new management said we're not going to honor the stock option agreement. And so then there was a wage claim filed. The plaintiff won below, and the court held that stock options are wages in Oregon. The issue was appealed by the defendant to the Court of Appeals, and the Court of Appeals dealt extensively with this whole issue of stock options are wages and how do you determine it and are they calculable. And the only reason why they remanded, not because they found the stock options weren't wages, they remanded because they said you have to determine whether you're going to get paid under the oral agreement or the formal written agreement, and you have to determine how you're going to come up with a measure of damages. And on that issue, the Paolini case in Idaho that was cited, the minority disagreed with Paolini. This is the Idaho Supreme Court, which certified this same issue in Idaho, and it was a close call. It was a narrow decision, but their statute is more narrow than Oregon's broad statute. And I have not found one case of hundreds of cases where Oregon has said that any type of compensation are not wages with the exception of Finnelson, and I believe this was for pensions, whether pensions could be wages or there's other cases with disability. But that was overturned by the Oregon Supreme Court. So there hasn't been one case where they found that any type of wages, when it's become an issue, have not been, any type of compensation have not been wages. Should this be certified to the Oregon Supreme Court? Should it be? This issue. I think it should, actually. All right. Your time has expired. Okay. I'll leave it at that. Thank you. We'll hear from the counsel for Maxim. May it please the Court. I'm John Neuwirth from the firm of Weill, Gottschall & Mangese on behalf of Maxim Integrated Products. The trial court's decision should be affirmed because the court correctly held that accepting all of the complaint's allegations is true. The complaint failed to state a breach of contract claim, an implied duty of good faith claim, as well as any claim under the Oregon Wage Act. Let me start and spend most of my time on the contract issue. The trial court correctly ruled that the contract claim should be dismissed because, as Judge Haggerty held, the contract at issue, which is an option agreement, unambiguously addresses the very situation that forms the basis of the complaint. Specifically, the option agreement specifically provides that shares can only be issued by Maxim when the shares are registered with the SEC and, and this is an independent basis, and when issuing shares would comply with all applicable laws. And applicable laws is defined in the option agreement to refer to both the federal securities laws and state securities laws. Where in the record does it state that the shares were unregistered? Well, I don't think it says it in those. I'm looking for a precise, you're a very precise lawyer, and I want a precise answer. I'm looking for, it's at excerpt ER, page 121. Where is it? I think, well, I'm going to be as precise as I possibly can, Your Honor. In paragraphs 12 and 13 of the complaint, as well as paragraphs 29 and 30 of the complaint, there are allegations that Maxim had failed to file periodic reports during its stock auction review. In addition, as Appellant referenced, there are two memoranda referenced in the complaint that Maxim issued to employees. One of them is referenced in paragraph 12 of the complaint. The other is referenced in paragraph 13 of the complaint. Either of them attached? Neither of them were attached, but they were incorporated, and we attached them to our papers below, and they're in the record before this Court, in pages 3 to 5 of our supplemental record. Mr. Lewis, I'm looking at paragraph 12, and I'm looking at paragraph 13, and following up on Judge Hawkins' questions, can you point to me what line the word unregistered finds itself? I didn't say that the word unregistered appears. I think the building blocks for being unregistered are incorporated by reference into the complaint or stated in the complaint. And what I'm referring to is in paragraph 12 of the complaint, the bottom last sentence, Plaintiff then received a company memo saying it would not issue stock to employees until its annual report was filed. And I'll take the Court through this analysis. There's also, in paragraph 13, an allegation. Plaintiff was told that he would have to wait until the company became current with its financial reporting obligations to exercise his option. And then there's a reference later on in that paragraph to the company now being current with reporting obligations. Well, you know, it almost seems like this case got here a little too early, to be honest, that it should have been converted from a motion to dismiss to a motion for summary judgment. You'd have the corporate secretary with all the appropriate documents attached to say here's the situation. These, in fact, were unregistered. Here's the situation, all of which would probably be undisputed because it would be a matter of both SEC record and corporate documents. So I think what the questions go to is, but we don't have such a document, and what we're doing is really sort of interlineating these words that don't say unregistered, but that we have to sort of divine them. And it seems to me that is beyond the scope of a 12b-6. I'm not sure, Judge McKeown, and let me try to explain why. I think Judge Haggerty made a legal determination that the shares were unregistered, and I think he did it based on facts that were pled in the complaint or incorporated by reference in the complaint. The complaint and the memos that I've referred to, which are in our record at pages 3 to 5, allege that the company didn't have periodic reports on file. We've cited in our papers, and this is the legal part of it, and I think on a motion to dismiss it was appropriate to make this legal determination. We've cited in our papers Rule 12b-25, as well as in footnote 12 of our papers, an SEC compliance and disclosure interpretation which talks about how 12b-25 works. Judge Haggerty did not specifically say 12b-25 in his opinion below. However, I think he was entitled to take judicial notice of the law in this area, and what 12b-25 says, according to the interpretation that I just mentioned, is that a company alone can make the determination as to whether it has shares available to issue, and that that determination is the company's alone. While the two memos that are incorporated by reference into the complaint and attached to our record at 3 to 5 make it clear, I submit, that the company made a determination that it could not issue shares when it didn't have periodic reports on file and while it was in the midst of its stock option review. Suppose the Board of Directors here deliberately failed to file its annual report as part of a plan to deprive people in the plaintiff's position of exercising their stock options. Would they have a cause of action? I don't believe so. Why not? If the Board deliberately didn't file the annual report? You know, they sat down as a group, quiet, get into a huddle, and they say, you know, if we don't file the annual report this year, Hannon is not going to be able to exercise his stock options, ha, ha, ha, let's do it. Your interpretation of 12B25 and the SEC compliance interpretation that a company alone can determine whether the stock is registered or not, would answer to Judge Hawkins, yes, they can do exactly that. Well, I think what the interpretation says is that the company can make a determination as to whether there are anti-fraud concerns that prohibit it from issuing shares. And I think the memos make clear that the company was making that determination. The Board conducted an investigation with independent counsel because it believed that there had been backdating? It was investigating as to whether there was backdating. Is there any proof in the record that Hannon was involved in backdating? No. I mean, basically I take it that the reality was when all this backdating blew up and perhaps blew up at this particular company, they decided to freeze the situation and not find themselves further in a hole by issuing the stock and the stock options. And then I assume thereby opening them up to yet another potential security violation. Sure. And those are the anti-fraud concerns that I think as a matter of law, Judge Haggerty recognized that the court, that the company was considering. I'm having difficulty understanding why this company would be in a hole as to Hannon by the backdating. If he's not involved in backdating, why not issue him a share so he can sell them? Two different scenarios, I think, as examples that come to mind. With respect to Hannon, to the extent that the company, during its stock option review, is in possession of good news and it issues Mr. Hannon's stock, he then goes and sells that stock because that's the purpose of the exercise, presumably. And then good news comes out later that we learn, that Maxim learns in its stock option review. He potentially has a claim for securities fraud against the company. Those are all speculative issues. Why did backdating affect Hannon? Not Wilworth, not Judge Hawkins, Hannon. Well, I'm not sure the backdating affected Hannon, other than because of an investigation into alleged backdating, Maxim was unable to issue shares and no one was permitted to exercise. No, no, they said they were unable to. Right. I mean, this wasn't an inability imposed by some force majeure. Maxim said they were unable to, and the reason they said they were unable to, as every other company did during these times, was because when they were doing the review, they were unable to file periodic reports because they didn't have accurate financial information until they got to the bottom of whether there was backdating or not. That didn't stop trading in the stock. It didn't stop trading in the secondary market, but it prohibited Maxim as a matter of securities law. And that's a legal issue, not a factual issue. Maxim directors could sell their stock in the market or buy some? They could, but there was a blackout, and I don't believe they would have, nor would it have been a wise thing to do, given the securities fraud implications of doing it while in the market. Let me just go back, though, to 12B25, which seems to be the crux of this. I mean, we keep saying that they're unregistered. Is that really the correct term? I think 12B25 states, and the interpretation to it states, that when you don't have periodic reports on file, the company can make a determination that it doesn't have shares available to issue because of anti-fraud concerns. So whether you use the word registered or not, there are no shares available to be issued. Correct. But that's why I'm saying, that's why I think it's a little bit of a semantic misnomer to put this in a registered, non-registered box, because what the rule says is, okay, as I understand it, basically if you, as you say it, you can continue to issue shares under an existing registration statement on Form S8, one that already existed, so you don't need new forms, only if the company makes a certain determination. In other words, that there's no 12A problems and that there are no fraud concerns. Correct. And what I'm saying, Your Honor. If that happens, let me just make sure I understand this right. If that happens, if the company said, well, I don't really think there's any anti-fraud concern here, they could go ahead and issue the shares to employees and others under the stock option, right? If they made that determination, they could with considerable risk, but I think that under certain circumstances, they could. Okay. So the question I have really is, at this stage of the game, is one letter that says, we're basically putting this in the deep freeze, is that sufficient on a 12B-6, or is that, again, as I intimated before, is that really, are we really in the summary judgment world here? I fully understand the question. I think it is legitimate on a 12B-6, because I think as a matter of law, under 12B-25 and under very basic securities laws, when you haven't filed periodic reports and when you're undergoing an internal accounting review, you cannot issue shares. And that is a legal determination. Put aside what word Judge Hagerty may have used, whether he said registered or whether he said something else. That is clearly the import of his decision, that when the company was undergoing its backdating review, it was unable to issue shares because they were unregistered or there was a securities fraud concern. It all means the same thing. And every single company was under the same situation, and every company always is, as a matter of securities law 101. And so I think it is an acceptable issue to resolve on a motion to dismiss as opposed to a motion for summary judgment, because at the bottom of it, it's a legal determination. And the facts are pled in the complaint that this company didn't have periodic reports on file. And the facts are pled in the complaint, and they can be seen in the memos that are referenced in the complaint, that the company made this determination that it couldn't issue shares. And what if they made that determination out of some kind of animus or penurious nature? In other words, we're basically going to shut down now on these stock options. At least we won't have to do that right now. Under what standard would we determine these so-called concerns as rising to the level of meeting the interpretation? I think 12B25 and the interpretation that we cite leaves it up to the company to determine whether they're anti-fraud concerns. So I understand the question, but I think 12B25 actually puts that decision in the hands of the company. Unreviewable and for any reason? According to the interpretation, it says that if the company determines that there are anti-fraud concerns. I think we have to take this case as we find it. Here we had a massive stock option review, and I don't think that the situation that you pose is necessarily the situation that we find ourselves in here. So you think this one's cabined by the facts, that there was actually a real-life fire going on at the time with the backdating issue, and therefore you can't dilute the notion of concerns because it actually was a real issue? It was a real situation, and on top of that it was a situation that was pled in the complaint, that in fact there was a stock options backdating review going on. And eventually there was a restatement, and these are all facts that the court could take judicial notice of. But there's no question that this complaint pleads that we had a real-life stock option review. And, in fact, it goes even further and talks about alleged improper activities of the board, et cetera. So now play it out. So they go through this backdating review and all that, and then what happens later then to the stock options? What actually happened, in fact, the stock option review was concluded in September of 2008, and under the option agreement that plaintiff had, he was afforded under Section 6 of the legal provisions, and I can speak to them as well, 90 days to exercise his options. And this was all spelled out very clearly in the option agreement in the contract that governs here. In addition to- The problem then for him simply being the state of the market? The problem was the state of the market. The options had become worthless, admittedly, within that 90-day period. However, a contract is a contract, and this is what the contract said. And we cite in our papers the provisions of the contract in addition to the legal provisions, 14B of the stock incentive plan and 9A of the plan, which specifically addresses the situation that we've just discussed, specifically addresses the situation of an inability to issue shares because of anti-fraud concerns. With respect to the one point that was raised about NASD registration, I think the issue is not whether MAXIM was registered with the NASD, but whether it had shares available to issue. So it issued no new shares of any kind, whether via stock option or otherwise. It was simply having trading on the secondary market, which wouldn't be shut down. Correct. But it wasn't going to issue shares itself, while in the possession of material non-public information. Correct. Okay. Would you comment briefly? I gave Mr. Mayfield a little extra time on the wage issue. I'll give you a minute to address the wage issue. Sure. Maybe I ought to start with the question we raised to Mr. Mayfield. Should we just let the Oregon Supreme Court answer this rather than having a federal court? Well, I think a word about Burke. Burke did not hold that stock options are wages. No Oregon court has ever found that stock options are wages. That's sort of a preface to the question you were just asked. We accept that. We acknowledge that. I think I don't think necessarily the question has to be certified to the Oregon Supreme Court. The Marshall case, while it doesn't come out and say that stock options are not wages under Oregon law, comes awfully close. It clearly says that a stock option is a contractual right, that a stock option creates no obligation on behalf of an employer, but rather requires an act by an employee. So I think the Marshall case comes awfully close to holding that stock options are not wages. There's no obligation on the part of the employer to issue stock when the employee exercises his option? There is. There is. But the Marshall court parsed the mechanics of how a stock option works to find that in the initial instance the obligation is that of the employee as opposed to the employer and suggested that under 652-610 of the Wage Act that an option wouldn't fit within that section for those reasons. Yeah, I mean, I think Marshall may be a little off in that regard in the sense that there is an obligation. The question is even whether the nature of the obligation or the payment terms fit more than whether or not the employee strikes first, so to speak. I mean, that just seems like a very odd reasoning. Well, that's a separate issue as to whether a stock option, I think you're saying. So let's just take that aside because we still don't have any Oregon controlling authority and we still have a federal court at a lower level making some one-off determination. Would this be best determined by the Oregon Supreme Court since it's a matter of state wage law? I don't know if it has to happen in this case is my answer. And the reason that's my answer is because I don't believe there's an underlying contractual basis for this option to be paid. And I think the contract claim is the basis for this entire suit. And if the contract claim fails, I think the wage claim necessarily fails. And so while it's an interesting question, I don't think it's a question that has to be decided in this case. Thank you. Thank you. I thank both counsel for your argument this morning. Hannan v. Maxim Integrated Products is submitted. And we'll hear argument in the next case, Little Fair v. Gonser. Yes, please. First of all, I had said that in the complaint I had made reference to the S.A. and that's not true. It was the 8K. It's paragraph 30. So I misspoke. So the original contentions in the pleadings that there was no reference to the S.A. stands. The other point is that Mr. Nearworth, when he was talking about this anti-fraud provision of the 12B25, that is not part of the rule. That is a SEC internal interpretation of that rule. And that wasn't cited to the court below. It was only cited for this appeal. And if you read 12B25, it states that notwithstanding paragraph B of this section, a registrant will not be eligible to use any registration statement under the Securities Act of 1993, the use of which is predicated on timely filed reports until the subject report is actually filed, pursuant to paragraph B3 of this section. And the timing is important because the S.A. in this case was filed in March of 2006. Mr. Hanan had tried to exercise this option in September of 2006 and again in February of 2007. And these are regularly filed annually every year, the S.A. form, and they're good. So this rule, 12B25, essentially states you can't file your next S.A. when it's regularly due if you have outstanding 10Ks and 10Qs that haven't been filed. That's not the case. This was already filed. It was already actively registered. This is a little bit more than just correcting a misstatement that you've made earlier to the court. You're now re-arguing. Do you have any other misstatements that you want to bring to the court's attention? I think that's it, Your Honor. Thank you. The case is submitted.
judges: Hawkins, McKeown, Bea